NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CCC ATLANTIC, LLC, | |
| Plaintiff, | |
| v. | Civil No. 18-cv-17433(RBK/AMD) |
| | **OPINION** |
| SILVERANG, DONOHOE, ROSENZWEIG & HALTZMAN, LLC, KEVIN J. SILVERANG, ESQUIRE; MARK S. HALTZMAN, ESQUIRE; PHILLIP S. ROSENZWEIG, ESQUIRE; STEPHEN E. SKOVRON, ESQUIRE | |
| Defendant. | |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court on Defendants' motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Motion to Dismiss ("Dismiss") [Doc. No. 19]. Plaintiff CCC Atlantic alleges that Defendants, its former law firm and lawyers, committed legal malpractice (Count I) and breached their fiduciary duty (Count II). For the reasons discussed below, Defendants' Motion to Dismiss is **GRANTED**. Count I is **DISMISSED WITHOUT PREJUDICE** and Count II is **DISMISSED WITH PREJUDICE**.

## I. BACKGROUND

This case is about alleged legal malpractice and breach of fiduciary duty. CCC Atlantic ("Plaintiff" or "the Company") is a company that develops commercial properties. Around 2006, it purchased the Cornerstone Commerce Center (the "Property") in Linwood, New Jersey.

Complaint ("Compl.") [Doc. No. 1-1] at ¶¶ 2, 9. Shortly thereafter, CCC Atlantic began suffering serious financial difficulties. In response, the Company secured a loan from two lenders (the "Lenders") and made improvements to the Property. Compl. at ¶ 11. Despite the Company's plan to improve its finances, these improvements failed to alleviate CCC's financial difficulties. The Company then defaulted on the loan, and the Lenders foreclosed on the Property. Compl. at ¶ 20. During this process, CCC Atlantic hired Silverang, Donohoe, Rozenweig, and Haltzman law firm ("Defendants"). Compl. at ¶ 19. The Defendants' legal representation forms the basis of the underlying dispute. Specifically, Plaintiff challenges Defendants' representation in three instances: litigating a prior action, negotiating a forbearance agreement, and failing to disclose a conflict of interest.

❖

CCC Atlantic's financial problems started in March 2007. In an effort to increase revenue, the Company secured a $41,000,000 commercial mortgage loan (the "2007 Loan") from the Lenders. Compl. at ¶ 11. CCC Atlantic then used these funds to make $17,000,000 worth of improvements to the Property. Compl. at ¶ 13. During this same period, CCC Atlantic received a tax abatement from the city of Linwood. Compl. at ¶ 12. This abatement permitted CCC Atlantic to forgo paying real estate taxes on the property for five years. Compl. at ¶¶ 12–13. In lieu of these payments, CCC Atlantic agreed to make real estate tax payments into the Lenders' escrow account. Compl. at ¶ 14. The amount of payments owed was determined by the value of the pre-improved Property. *Id*. These payments changed, however, four years later.

In 2011, the Property's real estate tax payments increased as the tax abatement period expired. The parties do not clearly explain the difference in amounts owed. What remains clear, however, is that CCC Atlantic did not have enough funding in the escrow account to cover the

new real estate tax payments. As a result, the city of Linwood billed the Lenders directly for the full amount, which was approximately $660,000, or more than double what CCC Atlantic had in escrow. Compl. at ¶ 15. After making the full payment, the Lenders requested CCC Atlantic compensate them. The parties also attempted to create a payment plan. Compl. at ¶¶ 17–18. These negotiations failed, however, and the Lenders declared CCC Atlantic to be in default and foreclosed on the Property. *Id*.

In response to this declaration, the Lenders filed a lawsuit (the "New Jersey Litigation") on January 27, 2012 against CCC Atlantic. *See Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 905 F. Supp. 2d 604, 614 (D.N.J. Feb. 15, 2013). The lawsuit focused on the foreclosure of the Property. Compl. at ¶ 20. CCC Atlantic retained Defendants during this litigation. Compl. at ¶ 19. In March 2012, the Lenders filed a motion to appoint Onyx Equities LLC ("Onyx") as a receiver over the Property. Compl. at ¶ 22. Defendants filed a brief in opposition to the appointment. Compl. at ¶ 23. The brief attached an affidavit stating that CCC Atlantic was orally advised that the Property possessed $7,000,000 in equity. Compl. at ¶ 23. It also stated that CCC Atlantic hired the KTR real estate company to conduct a formal appraisal (the "KTR appraisal") on the Property. Compl. at ¶ 24–25. CCC Atlantic alleges that this appraisal assessed the value of Property to be $53,300,000. Compl. at ¶ 27.

Judge Irenas heard oral arguments on November 14, 2012 to determine whether the Lenders were entitled to the appoint Onyx as a receiver. Compl. at ¶ 28. Judge Irenas ruled in Defendants' favor and appointed a receiver. In doing so, he weighed several different factors in making his determination. These factors included (1) if the property was inadequate security for the loan; (2) if the mortgage contract contained a clause granting the mortgage the right to a receiver, (3) if the mortgagor would continue to default; (4) the probability that the foreclosure

would be delayed; (5) the unstable financial statue of the mortgagor; and (6) the misuse of project funds by the mortgagor. *See Wells Fargo Bank*, *N.A. v. CCC Atl.*, *LLC*, 905 F. Supp. 2d 604, 614 (D.N.J. Feb. 15, 2013). Judge Irenas also noted that the 2007 loan stipulations allowed the Lenders to appoint a receiver over the Property in the event CCC Atlantic defaulted. *See Wells Fargo Bank*, *N.A.*, 905 F. Supp. 2d at 615. He noted CCC Atlantic's cashflow problems and concluded it would be unable to cure the tax escrow account deficiency. *See Wells Fargo Bank, N.A.*, 905 F. Supp. 2d at 616. Judge Irenas also declared CCC Atlantic's affidavit to be hearsay and noted that the KTR appraisal never entered into evidence. *Id.*

Following this hearing, Stabilis Master Fund III, LLC ("Stabilis") contacted CCC Atlantic. Stabilis offered to purchase the 2007 loan and to negotiate and fund a settlement agreement in the New Jersey litigation. Compl. at ¶ 39. As a result, CCC Atlantic and Stabilis entered into a forbearance agreement (the "Forbearance Agreement") in April 2014. Compl. at ¶ 41. The Defendants again represented CCC Atlantic during these negotiations. The agreement required CCC Atlantic to make monthly payments to Stabilis. *Id.* The agreement also stated that CCC Atlantic would be in default for missing a single payment. *Id.* In December 2015, when CCC missed a payment, Stabilis declared the Company to be in default. Compl. at ¶ 52.

During the New Jersey litigation and negotiating the Forbearance Agreement, the Defendants also interacted and negotiated on behalf of Bancorp, Inc. ("Bancorp"). Compl. at ¶ 56. Bancorp was a lending company that provided a loan to an unknown entity affiliated with CCC Atlantic. *Id.* The loan was used to purchase an undeveloped property near the Property. The unknown entity affiliated with CCC Atlantic defaulted on this loan and Bancorp took the undeveloped property by deed. Compl. at ¶ 57. This action caused the unknown affiliate to lose its equity in the undeveloped property. Compl. at ¶ 58.

Dissatisfied with Defendants' representation in the New Jersey litigation, negotiating the forbearance agreement, and failing to disclose a conflict of interest, CCC Atlantic filed a Complaint for malpractice and breach of fiduciary duty in New Jersey state court. Notice of Removal ("Removal") [Doc. No. 1] at 1. Defendants then removed the action to this Court. *Id.* Defendants now move to dismiss Plaintiff's Complaint. Defendants argue that CCC Atlantic failed to plausibly allege a claim for legal malpractice. Defendants' Brief in Support of Motion to Dismiss ("Defendants' Brief") [Doc. No. 19-2] at 12–17. Defendants claim that Plaintiff fails to assert any facts to show proximate causation. Defendants also argue that Plaintiff fails to plausibly allege any claim for breaching a fiduciary duty. Defendants' Brief at 17–18. The Court considers these arguments in turn.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d. Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

It is not for courts to decide at this point whether the non-moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims. *In re Rockefeller Ctr. Props.*, *Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002).

While "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

In making this determination, the court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id. (quoting Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S at 679). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," does not suffice. *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 678). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive a motion to dismiss where a court can only infer that a claim is merely possible rather than plausible. *Id.*

### III. DISCUSSION

CCC Atlantic claims that Defendants committed legal malpractice by failing to provide competent representation throughout the New Jersey litigation, in negotiating the Forbearance Agreement, and failing to recognize their conflict of interest. Compl. at ¶¶ 59–70. CCC Atlantic also claims that Defendants breached their fiduciary duty based on this same representation. Compl. at ¶¶ 71–76. Defendants, however, argue that CCC Atlantic fails to show proximate

cause in their legal malpractice claim. Defendants' Brief at 12–17. Defendants also argue that CCC Atlantic fails to plausibly allege any claim for breaching a fiduciary duty. Defendants' Brief at 17–18.

### 1. **Whether CCC Atlantic states a claim for legal malpractice**

CCC Atlantic alleges that Defendants committed legal malpractice by failing to advise it on the risks associated with the New Jersey litigation, failing to present the KTR appraisal into evidence at the Judge Irenas hearing, and failing to negotiate fairer terms in the Forbearance Agreement. Compl. at ¶¶ 64–67. CCC Atlantic also alleges that the Defendants failed to recognize an irreconcilable conflict of interest in representing both Bancorp and CCC Atlantic at the same time. Defendants, however, challenge these claims and argue that CCC Atlantic's claim fails to establish proximate cause.

To plausibly allege a claim of legal malpractice, a plaintiff must allege (1) an attorney-client relationship existed which created a duty of care by the defendant attorney, (2) the breach of that duty by the attorney, and (3) the attorney's breach proximately caused the plaintiff's harm. *See Lopez-Siguenza v. Roddy*, No. 13-cv-2005, 2014 WL 4854452, at *4 (D.N.J. Sept. 30, 2014). To properly plead causation, a plaintiff must allege that the negligent conduct by an attorney was a substantial factor in contributing to his harm. *See Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 309 (D.N.J. 2012); *Conklin* 145 N.J. 419-20. The test for substantial factor accounts for the fact that there can be any number of intervening causes between the initial wrongful act and the final injurious consequence. *See Wiatt*, 838 F. Supp. 2d at 310. "The test is thus suited for legal malpractice cases in which inadequate or inaccurate legal advice is alleged to be a concurrent cause to [the] harm." *Id.* If the plaintiff does not plead that it "would have been deterred from the undertaking or that the consequences would have been materially

different had they been properly advised, it cannot be concluded that the attorney's failure substantially contributed to plaintiff's loss." *Lamb v. Barbour*, 188 N.J. 6, 13 (1982).

Here, CCC Atlantic's legal malpractice claim fails because it does not properly plead that Defendants were a substantial factor in contributing to its financial harm. During the New Jersey litigation, CCC Atlantic argues that the Defendants provided incompetent representation by "failing to present the [Irenas'] Court with the KTR Appraisal" and "by failing to advise [CCC Atlantic] on the risks associated with [the litigation]." Compl. at ¶¶ 64–65. CCC Atlantic does not support these claims with any facts, however. Said another way, CCC does not explain to the court *how* it "would have been deterred from the undertaking or [that] the consequences would have been materially different" had the Defendants acted differently. *Lamb*, 188 N.J. at 13 (1982). Also, despite some self-serving commentary in its brief, there is simply no facts alleged to suggest that CCC Atlantic could have avoided the New Jersey litigation. For example, the Court can only guess *how* admitting the KTR Appraisal into evidence would have resulted in a more favorable ruling from Judge Irenas. This same mystery cripples Plaintiff's assertion that Defendants negligently failed to block the appointment of Onyx as the receiver of the Property. As the Court explained in *Lamb*, a trial judge cannot assume that because a business failed and because an attorney may have acted negligently, that the two facts are somehow related.

Furthermore, CCC Atlantic fails to properly allege that Defendants were a substantial factor in contributing to its harm in negotiating the Forbearance Agreement. Again, Plaintiff falls far short of what the New Jersey Supreme Court requires in *Lamb*. "To hold an [attorney] answerable for his failure to discourage [a] transaction [the Court] would have to speculate about his possible liability had he succeeded and the business were later operated successfully by another buyer." *Id*. at 14. Yet again, CCC Atlantic simply alleges no facts to plausibly suggest

that it would have taken a different and more favorable course of action or that Defendants failed to provide competent representation in negotiations with Stabilis. Compl. at ¶ 67. The Court cannot determine at this point if the Defendants were negligent in their representation or simply unsuccessful in obtaining better terms. *See Ziegelheim v. Apollo*, 128 N.J. 250, 267 (1992) ("We are mindful that attorneys cannot be held liable simply because they [were] not successful in persuading an opposing party to accept certain terms").

CCC Atlantic's claim against Defendants for their allege conflict of interest also fails. Most obviously, this Court has made clear that, "under New Jersey law, a violation of the Rules of Professional Conduct 'do[es] not *per se* give rise to a cause of action.'" *Pollen v. Comer*, No. 05-cv-1656, 2007 WL 1876489, at *9 (D.N.J. June 27, 2007) (quoting *Sommers v. McKinney*, 287 N.J. Super. 1, 13 (App. Div. 1996)). Indeed, these rules are "designed to provide guidance to lawyers" and "structure for regulat[ing] conduct through disciplinary agencies." *Pollen*, 2007 WL 1876489 at *10. Contrary to Plaintiff's argument, a professional conduct violation is not a *per se* basis for civil liability. *See id.* Such a violation can only be considered as evidence in support of a legal malpractice claim. Thus, without the support of CCC Atlantic's two other claims for legal malpractice, an allegation of breach of a fiduciary duty will not suffice. The Court therefore **DISMISSES** this claim.

### 2. Whether CCC Atlantic states a claim for breach of fiduciary duty.

CCC Atlantic alleges that Defendants breached their fiduciary duty for the same conduct it lists in its legal malpractice claim. Defendants, however, argue that CCC Atlantic fails to make any claim that they intentionally violated any specific fiduciary obligation. Defendants' Brief at 17–18. They further argue that an attorney cannot be held liable for both legal malpractice and breaching a fiduciary duty for the same conduct. *Id.*

"The law of fiduciary duty as it relates to attorneys is not well-differentiated from legal malpractice under New Jersey law." *Lopez-Siguenza v. Roddy*, No. 13-cv-2005, 2014 WL 4854452, at *6 (D.N.J. Sept. 30, 2014); *see Packerd-Bamberger & Co., Inc. v. Collier*, 771 A.2d 1194, 1203 (N.J. 2001). It is clear though that "an attorney who intentionally violates the duty of loyalty owed to a client commits a more egregious offense than one who negligently breaches the duty of care." *Lopez-Siguenza*, 2014 WL 4854452, at *6. To properly plead this claim, plaintiff "must plead misconduct by [the Defendants] as fiduciary, e.g., dishonesty, self-dealing, or breach of loyalty, beyond a breach of a duty of care." *Id*.

Here, CCC Atlantic fails to state a claim for breach of fiduciary duty. In the Complaint, CCC Atlantic simply lists the same conduct for this claim as it did for its legal malpractice claim. Compl. at ¶¶ 74–75. This duplicative language falls far short of what is required, however. *See Lopez-Siguenza*, 2014 WL 4854452, at *6 (explaining that attorneys cannot be held liable for breaching a fiduciary duty for the same conduct as in legal malpractice). This Court therefore **DISMISSES** Plaintiff's claim for breach of fiduciary duty. As the Court warned in *Lopez-Siguenza*, permitting this duplicative pleading would make attorneys liable as fiduciaries "for conduct that is no more than negligence." This Court shares this concern, and simply refuses to permit CCC Atlantic's claim for breach of fiduciary duty to survive without some factual allegations of misconduct.

### IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED**. Count I is **DISMISSED WITHOUT PREJUDICE** and Count II is **DISMISSED WITH PREJUDICE**.
.

Dated: 07/25/19               s/ Robert B. Kugler

                              ROBERT B. KUGLER

                              United States District Judge