# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| CCC ATLANTIC, LLC, | : | |
| | : | |
| Plaintiff, | : | Civil No. 18-17433 (RBK/AMD) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| PHILIP S. ROSENZWEIG, ESQ., *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |
| | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the separate motions to dismiss of Defendant Silverang, Donohoe, Rosenzweig & Haltzman, LLC ("the Firm") (Doc. 37) and Defendants Mark S. Haltzman, Esq., Philip S. Rosenzweig, Esq., Kevin J. Silverang, Esq., and Stephen E. Skovron, Esq. ("the Individual Defendants") (Doc. 38). For the reasons detailed herein, Defendants' motions are GRANTED and Plaintiff CCC Atlantic LLC's Amended Complaint (Doc. 35) is DISMISSED.

## I.     BACKGROUND[1]

This case is about alleged legal malpractice by the Firm and the Individual Defendants (collectively "Defendants") in their representation of Plaintiff CCC Atlantic LLC ("CCC Atlantic"). (Doc. 35 ("Am. Compl.") ¶1.)

### A.  Factual History

---

[1] On this motion to dismiss, the Court accepts as true the well-pleaded facts in the operative Complaint (Doc. 35) and construes them in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

CCC Atlantic is a commercial property development company. (Am. Compl. ¶11.) Around 2006, it purchased the Cornerstone Commerce Center, a mixed-use office and retail property located in Linwood, New Jersey (the "Property"). (*Id.*) Shortly thereafter, CCC Atlantic began suffering serious financial difficulties. In response, it secured a loan on March 2, 2007 from two lenders (the "Lenders") and made improvements to the Property. (*Id.* ¶¶13–15.) Despite CCC Atlantic's plan to improve its finances, these improvements failed to alleviate its financial difficulties. CCC Atlantic then defaulted on the loan, and the Lenders foreclosed on the Property. (*Id.* ¶22.) During this process, CCC Atlantic hired the Silverang, Donohoe, Rozenweig, and Haltzman law firm ("Defendants"). (*Id.* ¶21.) Defendants' legal representation forms the basis of the underlying dispute.

CCC Atlantic's financial problems began in March 2007. In an effort to increase revenue, the Company secured a $41,000,000 commercial mortgage loan (the "2007 Loan") from the Lenders. (Am. Compl. ¶13.) CCC Atlantic then used these funds to make $17,000,000 worth of improvements to the Property. (*Id.* ¶¶13–15.) During this same period, CCC Atlantic received a tax abatement from the city of Linwood that permitted it to forgo paying real estate taxes on the Property for five years. (*Id*. ¶15.) In lieu of these payments, CCC Atlantic agreed to make real estate tax payments into the Lenders' escrow account. (*Id*. ¶16.) The payment amount was based on the value of the pre-improved property. (*Id.*) These payments changed, however, four years later.

In 2011, CCC Atlantic's tax abatement ended, and the Property's real estate tax payments increased. (Am. Compl. ¶17.) The city of Linwood billed the Lenders for the full, unabated real estate taxes, which created a shortfall in the Lenders' real estate escrow account. (*Id.*) After making the full payment, the Lenders requested that CCC Atlantic compensate them. (*Id.* ¶19.) After CCC

Atlantic and the Lenders failed to agree as to payment, the Lenders initiated a lawsuit in this Court against CCC Atlantic on January 27, 2012 seeking foreclosure of the Property (the "New Jersey Litigation"). *See Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 905 F. Supp. 2d 604, 614 (D.N.J. 2012). CCC Atlantic then hired the Defendants as its legal representation in the New Jersey Litigation. (Am. Compl. ¶21.)

In March 2012, during the New Jersey litigation, the Lenders filed a motion to appoint Onyx Equities LLC ("Onyx") as receiver over the property. (*Id.* ¶24.) Defendants filed a brief in opposition to the appointment, along with an affidavit stating that CCC Atlantic had been orally advised that the Property possessed $7,000,000 in equity. (*Id.* ¶¶25–26.) Defendants' brief also stated that CCC Atlantic had hired the KTR real estate company to conduct a formal appraisal (the "KTR Appraisal") of the Property, which assessed the value of the Property to be $53,300,000. (*Id.* ¶¶26–29.) Judge Irenas heard oral arguments on November 14, 2012 to determine whether the Lenders were entitled to appoint Onyx as a receiver. (*Id.* ¶31.)

Judge Irenas ruled in the Lenders' favor and appointed Onyx as receiver of the Property. (Am. Compl. ¶34.) Judge Irenas weighed several factors in making this determination, including: (1) if the property was inadequate security for the loan; (2) if the mortgage contract contained a clause granting the mortgagee the right to a receiver; (3) if the mortgagor would continue to default; (4) the probability that the foreclosure would be delayed; (5) the unstable financial status of the mortgagor; and (6) the misuse of project funds by the mortgagor. *See Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 905 F. Supp. 2d 604, 614 (D.N.J. 2012). Judge Irenas noted that the 2007 loan stipulations allowed the Lenders to appoint a receiver over the Property in the event CCC Atlantic defaulted. *See Wells Fargo Bank, N.A.*, 905 F. Supp. 2d at 615. He noted CCC Atlantic's cashflow problems and concluded it would be unable to cure the tax escrow account deficiency.

*Id.* at 616. Judge Irenas also declared CCC Atlantic's affidavit to be hearsay and noted that the KTR appraisal never entered into evidence. *Id.*

Following this hearing, Stabilis Master Fund III, LLC ("Stabilis") contacted CCC Atlantic. Stabilis offered to purchase the 2007 loan agreement and to negotiate and fund a settlement of the New Jersey Litigation. (Am. Compl. ¶53.) As a result, CCC Atlantic and Stabilis entered into a forbearance agreement ("Forbearance Agreement") in June 2014 under which Stabilis became the holder of the 2007 Loan. (*Id.* ¶55.) The Forbearance Agreement required CCC Atlantic to make monthly payments to Stabilis to pay off its debt under the 2007 Loan. (*Id.* ¶56.) The Forbearance Agreement allowed Stabilis to declare CCC Atlantic in default for missing a single payment. (*Id.* ¶59.) In December 2015, when CCC Atlantic missed a payment, Stabilis declared it to be in default and became the owner of the Property through deed in May 2017. (*Id.* ¶¶70–71.)

In April 2014, a separate litigation (the "Atlantic County Litigation") began in the Superior Court of New Jersey, where Defendants, representing CCC Atlantic, filed suit against Onyx. (Am. Compl. ¶46.) This lawsuit sought to terminate Onyx's receivership and resume management of the Property. (*Id.*) CCC Atlantic alleged that Onyx had failed to perform its duty as receiver and had mismanaged the property, causing a loss of tenants and rent payments. (*Id.* ¶¶47–49.) In June 2014, CCC Atlantic and Onyx entered into a settlement agreement that resolved the Atlantic County Litigation and allowed CCC Atlantic to re-assume control of the Property. (*Id.* ¶¶50–52.) CCC Atlantic alleges that Defendants failed to properly negotiate the terms of this settlement, resulting in a loss of nearly $1 million. (*Id.*)

During the New Jersey Litigation and while negotiating the Forbearance Agreement, Defendants also interacted and negotiated on behalf of Bancorp, Inc. ("Bancorp"), a lending

company that provided a loan to an unknown entity associated with CCC Atlantic. (Am. Compl. ¶75.) The loan was used to purchase an undeveloped property near the Property. (*Id.*) The unknown entity affiliated with CCC Atlantic defaulted on this loan and Bancorp took the undeveloped property by deed. (*Id.* ¶76.) This action caused the unknown affiliate to lose its equity in the undeveloped property. (*Id.* ¶77.)

### B. Procedural History

Dissatisfied with Defendants' representation in the New Jersey and Atlantic County Litigations, negotiation of the Forbearance Agreement, and failure to disclose a conflict of interest, CCC Atlantic filed a complaint alleging legal malpractice and breach of fiduciary duty in New Jersey state court. (Doc. 1.) Defendants then removed the action to this Court. (*Id.*) Both sets of Defendants filed motions to dismiss CCC Atlantic's Complaint under Federal Rule of Civil Procedure 12(b)(6). (Docs. 19, 20.) On July 25, 2019, this Court granted those motions and dismissed CCC Atlantic's breach of fiduciary duty claim with prejudice and dismissed CCC Atlantic's legal malpractice claim with leave to amend. (Doc. 34.)

CCC Atlantic filed an Amended Complaint on August 8, 2019, alleging one count of legal malpractice. (Doc. 35.) Both sets of Defendants then filed motions to dismiss the Amended Complaint, arguing that the amendments did not cure the deficiencies in the original Complaint. (Docs. 37, 38.) The Court addresses these motions now.

## II. LEGAL STANDARD

When deciding a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6), the court limits its review to the face of the complaint. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011). The court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the plaintiff. *Phillips v. Cnty of Allegheny*,

515 F.3d 224, 228 (3d Cir. 2008). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The inquiry is not whether [a plaintiff] will ultimately prevail in a trial on the merits, but whether [he or she] should be afforded an opportunity to offer evidence in support of [his or her] claims. *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id*. (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can infer only that a claim is merely possible rather than plausible. *Id*.

## III. DISCUSSION

CCC Atlantic claims that the Defendants committed legal malpractice practice by (1) failing to present the KTR appraisal into evidence and failing to request a valuation hearing in the New Jersey litigation; (2) failing to ensure that the settlement agreement in the Atlantic County

litigation required Onyx to return the operating and security funds in its possession; (3) failing to negotiate more favorable terms in the Forbearance Agreement and failing to properly advise CCC Atlantic of the consequences of entering into the Forbearance Agreement; and (4) by failing to recognize an irreconcilable conflict of interest in representing both Bancorp and CCC Atlantic. (Am. Compl. ¶¶83-89.)

To plausibly state a claim for legal malpractice, a plaintiff must allege that (1) an attorney-client relationship existed which created a duty of care by the defendant attorney; (2) the breach of that duty by the attorney; and (3) the breach proximately caused the plaintiff's harm. *See Lopez-Siguenza v. Roddy*, Civ. No. 13-2005, 2014 WL 4854452, at \*4 (D.N.J. Sept. 30, 2014). Defendants argue here that CCC Atlantic cannot establish proximate cause.

To properly plead causation, a plaintiff must allege that the negligent conduct by an attorney was a substantial factor in contributing to the harm. *See Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 310 (D.N.J. 2012); *Conklin v. Hannoch Weisman*, 678 A.2d 1060, 1071–72 (N.J. 1996). The test for substantial factor accounts for the fact that there can be any number of intervening causes between the initial wrongful act and the final injurious consequence of the harm. *Conklin*, 678 A.2d at 1072. The substantial factor test does not require the plaintiff to show an unsevered link between the attorney's negligent conduct and the ultimate harm. *Id.* Rather, it is enough if the attorney's conduct is a substantial factor in bringing it about. *Id.* The test is thus suited for legal malpractice claims when inadequate or inaccurate legal advice is alleged to be a concurrent cause of the harm. *Id.*

The burden of proving the causal relationship rests with the plaintiff and cannot be satisfied by "mere conjecture, surmise or suspicion." *Sommers v. McKinney*, 670 A.2d 99, 104 (N.J. Super. Ct. App. Div. 1996). If the plaintiff does not plead that he or she would have been deterred from

the undertaking or that the consequences would have been materially different had he or she been properly advised, then it cannot be concluded that the attorney's failures substantially contributed to the plaintiff's harm. *Lamb v. Barbour*, 455 A.2d 1122, 1125 (N.J. Super. Ct. App. Div. 1982). In other words, the mere fact that a business failed and that an attorney may have acted negligently is insufficient to conclude that the two events are somehow related. *CCC Atl., LLC v. Silverang*, Civ. No. 18-17433, 2019 WL 3334797, at \*4 (D.N.J. Jul. 25, 2019).

In cases involving transactional legal malpractice, the plaintiff must allege some evidence suggesting that, even in the absence of negligence by the attorney, the other parties to a transaction would have been willing or able to agree to the plaintiff's desirable terms. *See Cottone v. Fox Rothschild, LLP*, 2014 WL 4287002 at \*15 (N.J. Super. Ct. App. Div. 2014); *Froom v. Perel*, 872 A.2d 1067, 1077 (N.J. Super. Ct. App. Div. 2005); *2175 Lemoine Ave. Corp. v. Finco, Inc.*, 640 A.2d 346, 353 (N.J. Super. Ct. App. Div. 1994). Moreover, attorneys cannot be held liable because they were unsuccessful in persuading an opposing party to accept certain terms. *Ziegelheim v. Apollo*, 607 A.2d 1298, 1306 (N.J. 1992). With this background in mind, the Court will now address each of CCC Atlantic's claims.

## A. New Jersey Litigation Based Claims

CCC Atlantic first claims that Defendants failed to provide competent representation in the New Jersey Litigation because they did not present the Court with the KTR Appraisal when opposing the motion to appoint a receiver, and because they failed to request a valuation hearing.

The Amended Complaint does not show that Defendants' failure to admit the KTR Appraisal into evidence was a substantial factor in Judge Irenas' decision to appoint Onyx as receiver of the Property. The evidence suggests that even if the Defendants admitted the KTR Appraisal into evidence, Judge Irenas still would have appointed Onyx as receiver of the Property.

In deciding whether to appoint Onyx as a receiver, Judge Irenas weighed several factors: (1) whether the Property was inadequate security for the loan; (2) whether the mortgage contract contained a clause granting the mortgagee the right to a receiver; (3) the continued default of the mortgagor; (4) the probability that foreclosure would be delayed in the future; (5) the unstable financial status of the mortgagor; and (6) the misuse of project funds by the mortgagor. *Wells Fargo*, 905 F. Supp. 2d at 614. Judge Irenas took particular notice of the fact that the contract included a provision for the appointment of a receiver in the event of default, which made the appointment of a receiver not a drastic remedy. *Id.* at 615. Additionally, in a later opinion, Judge Irenas explained that even if the KTR Appraisal was admitted into evidence, it still would not have changed the Court's conclusion that the balance of the equities weighed in favor of appointing a receiver. *Wells Fargo Bank, N.A. v. CCC Atl., LLC*, Civ. No. 12-521, 2013 WL 595625 at *4 (D.N.J. Feb. 15, 2013).

CCC Atlantic also claims that, had Defendants requested a valuation hearing, it would have showed that the Property could return to financial stability, and would have weighed against appointment of a receiver. (Doc. 42 at 22.) This claim also fails. Although financial status was one factor in Judge Irenas' analysis, CCC Atlantic still fails to show how weighing this factor differently could have changed the ultimate appointment of a receiver. In particular, CCC Atlantic does not address how this would overcome the great emphasis Judge Irenas placed on the parties' contractual provision for appointment of a receiver.[2] Accordingly, CCC Atlantic's claims regarding the New Jersey Litigation fail.

---

[2] Judge Irenas explained that "[t]he importance of these contractual provisions cannot be underestimated because they set apart this commercial foreclosure case from the traditional scenario in which a receiver is sought at equity and no such contractual provisions exist." *Wells Fargo*, 905 F. Supp. 2d at 615. CCC Atlantic does not explain how assigning a different weight to an equitable factor would alter Judge Irenas' analysis of the contractual provision, and instead relies on statements it has taken out of context. For example, CCC Atlantic points out that Judge Irenas questioned why the KTR Appraisal was not submitted earlier. (Doc. 42 at 22.) However, it ignores the fact that Judge Irenas continued on to state that the appraisal "would not change the Court's conclusion that Wells Fargo is entitled to the

### B. Atlantic County Settlement Agreement Claims

The Amended Complaint adds a claim that Defendants failed to provide competent representation in negotiating the Atlantic County settlement agreement with Onyx. (Am. Compl. ¶¶44–52.) CCC Atlantic argues that Defendants should have negotiated a settlement agreement that required Onyx to pay $550,000 in operating and security funds and $170,000 in maintenance costs. (*Id.*)

This claim fails. The Amended Complaint does not allege any facts plausibly suggesting that Onyx would have agreed to such terms. Further, the Amended Complaint's allegations do not make clear whether Defendants failed to ever propose such terms, or whether they were simply unsuccessful in persuading Onyx to accept these terms. *See Ziegelheim v. Apollo*, 607 A.2d 1298, 1306 (N.J. 1992) (stating that "attorneys cannot be held liable simply because they are not successful in persuading an opposing party to accept certain terms").

### C. Forbearance Agreement Claims

CCC Atlantic next claims that Defendants failed to provide competent representation in negotiating the terms of the Forbearance Agreement, and argues that Defendants further failed to advise CCC Atlantic of the risks of entering into the Forbearance Agreement. These Forbearance Agreement-based claims also fail.

As with the Atlantic County litigation claims, the Amended Complaint fails to suggest that the outcome would materially differ or that CCC Atlantic would have taken a different, more favorable course of action had the Defendants properly advised it of the consequences of entering into the Forbearance Agreement. CCC Atlantic simply alleges that it was deprived of the "opportunity to consider other avenues of relief, such as continuing to fight foreclosure." (Am.

---

appointment of a receiver." *Wells Fargo Bank, N.A. v. CCC Atl., LLC*, Civ. No. 12-521, 2013 WL 595625, at *4 (D.N.J. Feb. 15, 2013).

Compl. ¶61.) It provides no facts regarding what other avenues of relief it could have considered or whether those avenues would have been more favorable than the actual Forbearance Agreement. Nor does CCC Atlantic provide any facts detailing how fighting the foreclosure would have been more favorable than agreeing to the Forbearance Agreement.

Further, the Amended Complaint does not allege that Stabilis would have agreed to more favorable terms or that a more favorable deal even existed. The Court still cannot determine "if the Defendants were negligent in their representation or simply unsuccessful in obtaining better terms." *CCC Atl.*, 2019 WL 3334797, at \*4. Attorneys cannot be held liable merely for being unsuccessful in persuading an opposing party to accept certain terms. *See Ziegelheim*, 128 N.J. at 267. Furthermore, to hold an attorney liable for his or her failure to discourage a transaction, the Court would have to speculate about the attorney's future liability had he or she succeeded. *Lamb*, 455 A.2d at 1126. The Amended Complaint does not cure the defects that this Court initially found in the Forbearance Agreement claims, and they accordingly fail.

### D. Conflict of Interest Claim

Finally, CCC Atlantic claims that Defendants failed to provide competent representation by not disclosing a conflict of interest. This claim fails, as CCC Atlantic merely re-pleads the same allegations that this Court found insufficient in its original complaint. *See CCC Atl.*, 2019 WL 3334797 at \*4.

## IV. CONCLUSION

For the reasons detailed above, Defendants' motions (Docs. 37, 38) are **GRANTED**, and CCC Atlantic's Amended Complaint is **DISMISSED**. An accompanying Order shall issue.

Dated:     3/10/2020                                    /s Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge